IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANA KNOTT,                       )
                                  )
        Plaintiff,                )
                                  )
    v.                            )     1:13CV332
                                  )
CAROLYN W. COLVIN,                )
Commissioner of Social            )
Security,                         )
                                  )
        Defendant.                )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Dana Knott brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. (Doc. 2.) The parties have filed cross-motions for judgment (Docs. 10, 15), and the administrative record has been certified to the court for review. For the reasons set forth below, the Commissioner's motion will be granted, Knott's motion will be denied, and this case will be dismissed.

**I.  BACKGROUND**

Knott filed her application for Disability Insurance

Benefits ("DIB") on January 4, 2010, and her application for Supplemental Security Income ("SSI") on January 8, 2010, alleging a disability onset date of March 6, 2007. (Tr. at 231-41.)[1] Her applications were denied initially (id. at 125, 126) and upon reconsideration (id. at 159, 160). Thereafter, Knott requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Id. at 197-98.) Knott, along with her attorney and a vocational expert ("VE"), attended the subsequent hearing on August 25, 2011. (Id. at 45.) The ALJ ultimately determined that Knott was not disabled within the meaning of the Act (id. at 39) and, on February 19, 2013, the Appeals Council denied Knott's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 1-4).[2]

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since December 28, 2009, the

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 6.)

[2] A prior ALJ had determined on October 27, 2009, that Knott was disabled under the meaning of the Act from March 6, 2007, through February 25, 2009. (Id. at 90.) He then found Knott had medically improved and was no longer disabled beginning on February 26, 2009. (Id. at 93-94.) The ALJ in this case adopted the prior ALJ's decision. (Id. at 33.)

> amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: injuries from a motor vehicle accident including T4 and T6 burst fractures, C1 and C2 fractures, rib fractures and a liver laceration, depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should perform simple repetitive tasks, which shall be defined as jobs with a Specific Vocational Profile level of no greater than one or two; and the claimant should work only in a low stress work environment, which shall be defined as work that does not involve production pace or work deadlines, and allows her to work at her own pace, and have a predictable schedule.
>
> . . . .
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(<u>Id.</u> at 30-32, 38.)

The ALJ then considered Knott's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and

3

determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." (Id. at 38.)  Thus, the ALJ determined that Knott was not disabled under the meaning of the Act.  (Id. at 39.)

## II. ANALYSIS

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case *de novo*." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a

4

preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v.

Harris, 658 F.2d 260, 264 (4th Cir. 1981).  In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims."  Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id.  The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step.  Id. at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's RFC. Id. at 179.[4] Step four then requires the ALJ to

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a

7

assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

In the present case, the ALJ found that Knott had not engaged in "substantial gainful activity" since her amended alleged onset date. (Tr. at 30.) She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Knott suffered from the

---

claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

8

following severe impairments resulting from a motor vehicle accident: T4 and T6 burst fractures, C1 and C2 fractures, rib fractures, a liver laceration, depression, and anxiety. (Id.) The ALJ found at step three that these impairments did not meet or medically equal a disability listing. (Id. at 31.) Accordingly, he assessed Knott's RFC and determined that she could perform light work with some further limitations, including that she could only perform simple repetitive tasks and had to work in a low-stress environment. (Id. at 32.) Because Knott's past relevant work as a cosmetologist does not meet those criteria, the ALJ found at step four that she could not return to that work. (Id. at 38.) Thus, the burden shifted to the Commissioner to prove that a "significant number of jobs exist which [Knott] could perform, despite [her] impairments." Hines, 453 F.3d at 563. The ALJ then relied on the testimony of the VE and determined that Knott could perform the jobs of ticket-taker, marker, and photocopy machine operator. (Tr. at 39.) Thus, the ALJ concluded that Knott was not disabled under the Act. (Id.)

Knott first argues that this case must be remanded because the ALJ never made a credibility judgment on a medical source statement ("MSS") submitted by her treating physician, Dr. Oudeh, after the ALJ handed down his decision. (Doc. 11 at 4-7; Tr. at 487-93 (MSS).) The Appeals Council made the MSS part of

9

the record but found that it provided no basis to alter the ALJ's decision. (Tr. at 5.) In the MSS, Dr. Oudeh opined that Knott "could not be productive in an 8 hour work day with her condition," she could never lift weight more than a gallon of milk, never balance or stoop, needed frequent breaks from either standing or sitting, and had several other disabling restrictions. (Id. at 487-93.) The MSS was presumably intended to address the ALJ's observation that Dr. Oudeh's prior opinion "was not functional in nature and did not describe [Knott's] abilities and limitations for specific work-related activities." (Id. at 34.) The Commissioner argues that, even had the ALJ considered the MSS, the ALJ's decision would have been the same because: (1) the limitations Dr. Oudeh noted were already accounted for in the ALJ's RFC finding; (2) the ALJ already considered such limitations when he made his initial decision; and (3) the evidence was so one-sided that Dr. Oudeh's MSS would not have changed the outcome. (Doc. 17 at 6-11.)

Knott relies on Meyer v. Astrue, where the Fourth Circuit required remand because new evidence from a treating physician was presented after the ALJ's decision and the ALJ thus never determined its credibility. 662 F.3d 700, 706-07 (4th Cir. 2011). In Meyer, a physician who performed back surgery on the claimant at first declined to provide opinion evidence to the ALJ. Id. at 703. After the ALJ rendered a decision denying

disability, the physician submitted an MSS. Id. at 704. The Appeals Council found no reason to depart from the ALJ's judgment, and the Magistrate Judge agreed. Id. The district court then entered a final order adopting the Magistrate Judge's recommendation. Id. The Fourth Circuit reversed and remanded, in part because the ALJ had not had the opportunity to conduct fact finding regarding the physician's additional MSS. Id. at 706–07.

Although remand is required in some circumstances, the Fourth Circuit noted, "the lack of such additional fact finding does not render judicial review 'impossible' — as long as the record provides 'an adequate explanation of [the Commissioner's] decision.'" Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)). Thus, if substantial evidence supports the ALJ's findings, introduction of new evidence after the decision does not necessitate remand. Id. (citing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)). "Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record," remand is appropriate. Id. (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). "[A]nalysis from the Appeals Council or remand to the ALJ for such analysis would be particularly helpful when the new evidence constitutes the only record

evidence as to the opinion of the treating physician." Id. at 706.

The situation here is slightly different from that in Meyer. The ALJ's record in Meyer contained no opinion from the claimant's treating physician and no medical opinion evidence in support of the ALJ's conclusion – creating what the Fourth Circuit characterized as an "evidentiary gap." Meyer, 662 F.3d at 707 ("The ALJ emphasized that the record before it lacked 'restrictions placed on the claimant by a treating physician,' suggesting that this evidentiary gap played a role in its decision.").[5] Here, in contrast, the record contained, and the ALJ considered, a previous (September 10, 2010) note from Dr. Oudeh and gave it little weight.[6] (Tr. at 34, 411.) Significantly, the ALJ gave three separate reasons for discounting Dr. Oudeh's opinion. First, he found the opinion "neither consistent with the overall objective medical evidence, nor with [Dr. Oudeh's] treating notes, that showed that [Knott's] physical examinations were generally unremarkable,"

---

[5] In Meyer, the only medical opinion evidence submitted to the ALJ was the report of a doctor who concluded, contrary to the ALJ's decision, that Meyer could not perform light work. However, the ALJ gave that report little weight and instead relied upon scant objective evidence. Id. at 703.

[6] Dr. Oudeh's note stated "[i]n my personal opinion [Knott] will not be a candidate for any rehabilitation at this point and will be disabled for the rest of her life." (Tr. at 411.) It also noted Knott's history of back and neck pain as well as depression and anxiety. (Id.)

(Id. (citing id. at 411-44, 451-84)), and it conflicted with other opinion evidence to which the ALJ assigned great weight (see id. at 34-38). Second, the ALJ noted, the opinion was not functional in nature. (Id. at 34.) Finally, he found that Dr. Oudeh's conclusions on dispositive issues, such as whether Knott is disabled, are reserved to the Commissioner and not entitled to any weight. (Id.)

Thus, Dr. Oudeh's failure to provide a functional analysis was an additional justification for the ALJ's determination that the opinion merited little weight. It is clear from the decision that the ALJ independently discounted Dr. Oudeh's initial opinion because he found it to be contrary to both the doctor's own treatment notes and the opinions of other doctors. (Tr. at 34.) Had the ALJ stopped there, Meyer would be of little help to Knott because the new evidence would not change the fact that substantial objective and subjective evidence contradicts Dr. Oudeh's opinion.[7] A conclusion that remand is required on this record, therefore, would be tantamount to penalizing the ALJ for including additional reasons in support of his decision to accord little weight to the opinion. Meyer does not demand such a result.

---

[7] Such evidence would then not be "material" under Meyer because there would not be "a reasonable possibility that [the evidence] would have changed the outcome." 662 F.3d at 705 (quoting Wilkins, 953 F.2d at 96). This is particularly true because, as discussed infra, the ALJ was entitled to rely upon the opinions of two non-examining physicians because they were consistent with the record as a whole.

13

Next, Knott contends the ALJ failed to account for some of her non-exertional limitations in the RFC and failed to mention them in the hypothetical question he posed to the VE. (Doc. 11 at 7-13.) She particularly contends that six limitations were excluded: (1) Dr. Alan Cohen's opinion that Knott had a very limited range of motion in the neck (Tr. at 403); (2) Dr. April L. Strobel-Nuss' findings that Knott was "somewhat capable of interacting appropriately [with] coworkers" and that she was limited to simple routine repetitive tasks ("SRRTs") in a "low-social setting" (id. at 108); (3) Dr. Atul Kantesaria's opinion that Knott's ability to perform SRRTs was mildly-to-moderately limited (id. at 400) and that she had some mental limitations (id. at 399); (4) Knott's moderate limitation in concentration; (5) Dr. Cohen's and Dr. Oudeh's opinions that Knott's grip weakened when sustained (id. at 404, 453); and (6) Knott's severe pain.

The first, second, and fifth of these contentions are unpersuasive because, even assuming the ALJ erred, such error was harmless and remand is not required. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (opinion of Hall, J.) (holding that remand is not appropriate where the ALJ would have reached the same conclusion despite his error); Harvey v. Colvin, No. 5:13-CV-392-BO, 2014 WL 1912100, at *2 (E.D.N.C. May 13, 2014). Any error regarding the range-of-motion of Knott's

neck would be harmless because the VE testified that performance of the three jobs she identified in the national economy would not be affected by a limited range-of-motion. (Tr. at 80.) With respect to Knott's social capabilities, the jobs of marker and photocopy machine operator do not require a high degree of social interaction. See Dictionary of Occupational Titles ("DOT"), Marker, DOT Code 209.587-034, available at 1991 WL 671802; id., Photocopying-Machine Operator, DOT Code 207.685-014, available at 1991 WL 671745; Farnsworth v. Astrue, 604 F. Supp. 2d 828, 858 (N.D. W. Va. 2009) (finding that error is harmless when "there is no evidence the inclusion of the limitation in the hypothetical to the VE would have resulted in a different finding by the ALJ regarding the availability of jobs in the national economy"). Similarly, the jobs cited do not require the ability to maintain a strong, sustained grip, so any error regarding the strength of Knott's grip was also harmless. See DOT, Marker, DOT Code 209.587-034, available at 1991 WL 671802; id., Photocopying-Machine Operator, DOT Code 207.685-014, available at 1991 WL 671745; id., Ticket Taker, DOT Code 344.667-010, available at 1991 WL 672863.

The third contention is likewise misplaced; as the Commissioner notes, the ALJ was entitled to rely on the conclusions of Drs. Strobel-Nuss and Mitchel Rapp, who determined that Knott could perform SRRTs. (See Tr. 107-08,

152-56.) Because this conclusion is consistent with the objective evidence, it cannot be disturbed. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that the ALJ is entitled to rely on the testimony of a non-examining physician when it is consistent with the record, even if an examining physician disagrees). As for the fourth argument, the Commissioner is correct that the RFC and the hypothetical question correctly accounted for Knott's concentration limitation by restricting her to "simple repetitive tasks." (Tr. at 32 (RFC), 78 (hypothetical question).) See Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *7-8 (M.D.N.C. Apr. 16, 2012), adopted by 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012) (rejecting the claimant's argument that a limitation preventing him from performing SRRTs and limiting his interaction with others insufficiently accounted for his intellectual deficit and concentration problems).[8]

Knott's sixth argument, that the ALJ failed to account for her complaints of severe pain, also fails. Hypothetical questions to a VE must set out all of a claimant's impairments, Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), but they need only include those impairments which the ALJ finds credible, see Cranfill v. Colvin, No. 1:10CV925, 2013 WL 1736597, at *3

---

[8] Moreover, the ALJ also limited Knott to work in a low-stress environment without deadlines, further accounting for her limitation in concentration.

16

(M.D.N.C. Apr. 9, 2013) (citing Mickles, 29 F.3d at 929 n.7 (Luttig, J., concurring in the judgment)). Because the ALJ found that Knott's allegations of pain were not credible to the extent they conflicted with the RFC assessment (Tr. at 36), the ALJ did not have to include those subjective complaints in either the hypothetical question or the RFC calculation. Thus, unless the ALJ failed to properly assess Knott's credibility, there was no reversible error.

To this end, Knott argues that "[t]he ALJ erred by failing to make a specific finding as to the degree to which [her] pain allegations were credible." (Doc. 11 at 14.) However, the ALJ correctly followed the two-step procedure for determining a claimant's credibility set out in Craig. At step one, the claimant must produce "objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*.'" Craig, 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)) (emphasis in original). If the claimant clears that hurdle, the ALJ then must make a credibility judgment, taking into account

> all the available evidence, including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

activities, specific descriptions of the pain, and any
medical treatment taken to alleviate it.

Id. at 595 (citing 20 C.F.R. §§ 416.929(c)(1)-(3) & 404.1529(c)(1)-(3)) (internal quotation marks and citations omitted).

Here, the ALJ determined at step one that Knott's medical impairments could reasonably be expected to cause her alleged symptoms. (Tr. at 36.) At step two, however, the ALJ considered all of the evidence and determined that Knott's allegations were not credible to the extent they deviated from the RFC. (Id.) This was not error. See Chavis v. Colvin, No. 1:11CV771, 2013 WL 7853486, at *8-9 (M.D.N.C. Mar. 4, 2013). Knott's argument misinterprets the Craig process; at step one, the ALJ does not determine whether a claimant's statements are credible, but only whether objective evidence shows that one of her medical impairments *could* cause the alleged symptoms. A positive finding at step one says nothing about the credibility of the claimant's statements. Moreover, Knott's assertion that the ALJ never made a finding on the degree to which her testimony was credible is inaccurate. The ALJ determined that her testimony was not credible to the extent it differed from the RFC. This finding was sufficient to satisfy Craig. Cf. Chavis, 2013 WL 7853486, at *8. Notably, the ALJ gave specific findings as to why he found Knott's pain symptoms not credible

to the extent they differed from the RFC. (Tr. 37-38.) Thus, review of the ALJ's credibility assessment is possible despite the conclusory nature of his Craig step-two finding.[9] The ALJ's credibility judgments will not be disturbed.

**III. CONCLUSION**

For the reasons stated, the court finds that the factual findings of the ALJ, which were adopted by the Commissioner, are supported by substantial evidence and were reached through application of the correct legal standard.

IT IS THEREFORE ORDERED that Knott's motion for judgment on the pleadings (Doc. 10) is DENIED, the Commissioner's motion for judgment on the pleadings (Doc. 15) is GRANTED, and this action is DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder<br>United States District Judge

June 2, 2014

---

[9] Because of these specific observations, this case differs from recent cases criticizing an ALJ's conclusory finding that a claimant was not credible to the extent her testimony was inconsistent with the ALJ's RFC because such statements thwart meaningful judicial review. See, e.g., Garcia v. Colvin, 741 F.3d 758, 762 (7th Cir. 2013) (admonishing ALJ for employing a "boilerplate cart-before-the-horse credibility formula" which does not allow for meaningful judicial review); see also Bjornson v. Astrue, 671 F.3d 640, 644-45 (7th Cir. 2012) (describing such a conclusory finding as "opaque boilerplate" and "meaningless").